IN THE UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CRUZ SANCHEZ and CIELO HILLS, LLC, as Intervenor | § § § |
| v. | §   CIVIL ACTION NO. SA-19-CV-01248-XR § |
| HOUSING AUTHORITY OF THE CITY OF SAN ANTONIO, TEXAS | § § § |

**DEFENDANT HOUSING AUTHORITY OF THE CITY OF SAN ANTONIO'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(c)**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES, Defendant, HOUSING AUTHORITY OF THE CITY OF SAN ANTONIO (hereinafter referred to as "Defendant" or "SAHA") and files its Motion to Dismiss Plaintiff Cruz Sanchez' and Intervenor Cielo Hills, LLC's claims herein Pursuant to Federal Rule of Civil Procedure 12(c), and in support thereof would show unto the Court as follows:

## I.
### PROCEDURAL BACKGROUND

1.  Plaintiff, Cruz Sanchez, filed her Original Petition against SAHA on September 5, 2019 in the 224th Judicial District Court of Bexar County, Texas. In her Original Petition, Plaintiff alleges Defendant committed violations of 42 U.S.C. 1983 et seq. and 42 U.S.C. 3601 et seq.[1] Plaintiff asserts "Defendant's actions violated, under color of law, rights created by the U.S. Constitution or federal statutes[,] [s]pecifically, that Defendant violated rights afforded to her by the Fair Housing Act as a person with a disability."[2] Plaintiff alleges SAHA failed to make

---

[1] Docket No. 1-4, p. 5 (Plaintiff's Original Petition).
[2] *Id*.

reasonable efforts to accommodate her disability after she was terminated from the subsidized Section 8 Housing Voucher Program administered by SAHA.[3]

2.  Plaintiff's landlord Cielo Hills, LLC, Intervenor (hereinafter referred to as "Cielo Hills" or "Intervenor"), subsequently filed a Plea in Intervention on September 13, 2019.[4] Intervenor alleges it has a justiciable interest in the matters in controversy because "[a]s Plaintiff's landlord and as a party to the Housing Assistance Payments ("HAP") Contract at issue, the past due payments Plaintiff seeks from Defendant are ultimately due and owing to Intervenor Cielo Hills, LLC."[5] Intervenor incorporated Plaintiff's Original Petition in its plea in intervention.[6]

3.  SAHA filed its Original Answer denying Plaintiff's claims on October 11, 2019.[7] Also on October 11, 2019, SAHA filed its Motion to Strike Intervenor's Plea in Intervention.[8] On October 21, 2019, SAHA removed this case to federal court pursuant to 28 U.S.C. §§ 1331, 1441, and 1443.[9]

## II.
### FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

4.  Plaintiff is a participant in the federally subsidized Section 8 Housing Voucher Program administered by SAHA.[10] The Housing Voucher Program requires annual or periodic family composition and income recertification to ensure an individual and/or family has continued eligibility to participate in the program. Plaintiff had a recertification appointment on May 16, 2018.[11] Plaintiff alleges she and her son arrived timely for her appointment and checked in at

---

[3] *Id*.
[4] *See* Docket No. 1-4, p. 11 (Intervenor's Plea in Intervention).
[5] Docket No. 1-4, p. 12.
[6] *Id.*
[7] *See* Docket No. 1-4, p. 15 (SAHA's Original Answer).
[8] *See* Docket No. 1-4, p. 17 (SAHA's Motion to Strike Plea in Intervention).
[9] *See* Docket No. 1.
[10] Docket No. 1-4, p. 2, ¶ 7.
[11] Docket No. 1-4, pp. 2 – 3, ¶¶ 7 – 8.

SAHA's electronic check-in station.[12] Plaintiff alleges "after much time had passed without being called into an office for her appointment, [] Plaintiff checked in with the receptionist only to be told she had no appointment."[13] Plaintiff alleges she "showed the receptionist [Plaintiff's] [notice of] appointment letter and her [check-in] stub."[14] Plaintiff further alleges "the receptionist maintained her assertion that Plaintiff had no appointment that day and that [Plaintiff's] name did not show [up] as having checked in despite the fact that Plaintiff had a check-in stub in her possession."[15] Plaintiff further alleges "the receptionist kept both the check-in stub and the appointment letter and told [] Plaintiff to go home and await a letter scheduling a new appointment."[16] Plaintiff alleges she went home.[17]

5. Plaintiff alleges she never received another letter regarding a rescheduled recertification appointment.[18] Plaintiff alleges that the apartment complex "was experiencing theft and/or vandalism at the community mailbox structure."[19] Plaintiff further alleges she "received a Notice of Intent to Terminate Housing Assistance Payments Contract, dated June 20, 2018, alleging Plaintiff had missed two recertification appointments—one on May 16, 2018, and one on May 29, 2018."[20] Plaintiff asserts she was present for the May 16, 2018 recertification appointment but never received notice of the May 29, 2019 appointment.[21]

6. Plaintiff requested an informal administrative hearing to appeal/challenge the

---

[12] Docket No. 1-4, p. 2, ¶ 7.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] Docket No. 1-4, p. 3, ¶ 8.
[19] *Id.*
[20] *Id.*
[21] *Id.*

Notice of Intent to Terminate Housing Assistance Payments Contract.[22] The request was granted and the informal administrative hearing was scheduled for September 6, 2018 at 3:15 p.m.[23] Plaintiff was late to the administrative hearing and allegedly "informed that she was too late to be afforded a hearing."[24] Plaintiff further alleges she "is disabled and cannot drive and must rely on bus service for transportation."[25]

      7.      Plaintiff received a Notice of Informal Hearing Decision letter dated September 17, 2018, in which the Hearing Officer's Decision provided "You FAILED TO APPEAR for your informal hearing, therefore assistance is terminated."[26] The Notice of Informal Hearing Decision letter further provided that "there is no other appeal process available with SAHA…This [c]oncludes the informal hearing administrative process."[27]

      8.      Plaintiff alleges she filed a Reasonable Accommodation Request, on or about December 14, 2018, requesting the reinstatement of Plaintiff's eligibility in the Housing Voucher Program "retroactively to the date of termination and that the landlord is paid retroactively as well."[28] An informal administrative hearing was held on May 14, 2019, based on Plaintiff's Request for Reinstatement.[29] On May 28, 2019, SAHA mailed a Notice of Informal Hearing Decision, ruling that "Plaintiff could continue on the [S]ection 8 [Housing] [V]oucher program, but made no ruling as to whether the landlord would be paid retroactively for the period of time after the previous hearing when the rental assistance payments were abated or terminated."[30]

---

[22] Docket No. 1-4, p. 3, ¶ 9.
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] Docket No. 1-4, pp. 3 – 4, ¶ 10.
[27] Docket No. 1-4, p. 4, ¶ 10.
[28] Docket No. 1-4, p. 4, ¶ 11.
[29] Docket No. 1-4, p. 4, ¶ 12.
[30] *Id.*

Plaintiff alleges SAHA "formally denied Plaintiff's request that the Plaintiff's landlord be paid retroactively."[31]

9. As stated above, Plaintiff asserts "Defendant's actions violated, under color of law, rights created by the U.S. Constitution or federal statutes[,] [s]pecifically, that Defendant violated rights afforded to her by the Fair Housing Act as a person with a disability."[32] Plaintiff alleges SAHA failed to make reasonable efforts to accommodate her disability after she was terminated from the subsidized Section 8 Housing Voucher Program administered by SAHA.[33] Plaintiff further alleges Defendant's refusal to make retroactive payments to Plaintiff's landlord "violate[d] the disability protections of the Fair Housing Act that require Defendant to make reasonable accommodations so that [a] disabled person may have the equal opportunity to use and enjoy a dwelling."[34] Plaintiff asserts the reasonable accommodation can be a change in a rule, policy, practice, or service.[35] Plaintiff further alleges that SAHA "has failed to accommodate Plaintiff by failing to waive its policy set forth in its Administrative Plan at 13.2.E(5): stating that 'Once a HAP contract is terminated, no further [Housing Assistance Payments] may be made under that contract.'"[36] Plaintiff finally asserts that "[a]t the time [SAHA] granted Plaintiff a new hearing—pursuant to her reasonable accommodation request—then ruled that Plaintiff could continue on the voucher program, [SAHA] should have also waived its policy to make no payments on terminated HAP contracts and should have made payments on the HAP contract retroactively."[37]

---

[31] *Id*.
[32] Docket No. 1-4, p. 5, ¶ 13 - 14 (Plaintiff's Original Petition).
[33] *Id*.
[34] Docket No. 1-4, p. 5, ¶ 14.
[35] *Id*.
[36] *Id*.
[37] *Id*.

## III.
## STANDARD OF REVIEW

10. A motion under Federal Rule of Civil Procedure 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment can be rendered by looking to the substance of the pleadings and any judicially noticed facts.[38] The standard of review under a Rule 12(c) motion is the same as under a Federal Rule of Civil Procedure 12(b)(6) motion.[39] A plaintiff must state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law.[40] When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations made by plaintiff as being true and the court cannot affirm dismissal unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[41] In *Bell Atlantic Corp. v. Twombly*, the Supreme Court held that a plaintiff is not under a heightened requirement of pleading specific facts, but only required to plead enough facts to state a claim to relief that is plausible on its face.[42] However, in order to survive a motion to dismiss, the Court held that a plaintiff's complaint must "nudge" their claims across the line from conceivable to plausible.[43] Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that – even if doubtful in fact – the allegations in the complaint are true.[44] Conclusory allegations masquerading as factual conclusions will not suffice to prevent a motion to dismiss.[45]

---

[38] *Great Plaints Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).
[39] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).
[40] *See* Fed. R. Civ. P. 12(b)(6).
[41] *Drs. Bethea, Moustoukas & Weaver, L.L.C. v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004).
[42] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[43] *Id*.
[44] *Id*. at 589.
[45] *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

A plaintiff's obligation to provide the grounds for his entitlement to relief requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice.[46] The tenet that a court must accept as true all of the allegations contained in a complaint s inapplicable to legal conclusions.[47] Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.[48]

## IV.
### ARGUMENTS AND AUTHORITIES

**a.   Plaintiff Does Not Have Standing to Bring this Suit.**

11.   Plaintiff has not asserted sufficient factual allegations to support she was discriminated against or not afforded a reasonable accommodation by SAHA in violation of the disability protections of the Fair Housing Act.  Instead, the factual pleadings contained in Plaintiff's Original Petition actually show that Plaintiff was afforded a reasonable accommodation, after filing a Reasonable Accommodation Request, because she was reinstated into the Section 8 Housing Voucher Program and eligible to receive Housing Assistance Payments.[49]  Plaintiff was reinstated into the Section 8 Housing Voucher Program even after missing two recertification appointments and an informal administrative hearing to appeal/challenge the Notice of Intent to Terminate Housing Assistance Payments Contract she received as a result of missing the two prior recertification hearings.[50]

12.   Based on Plaintiff's Original Petition, Plaintiff's sole complaint against SAHA is that SAHA allegedly refuses to make retroactive rental payments to Plaintiff's landlord, Intervenor Cielo Hills, for the period of time when Plaintiff's participation in the Section 8 Housing Voucher

---

[46] *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 268 (1986)).
[47] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[48] *Id*.
[49] Docket No. 1-4, p. 4, ¶¶ 11 – 12.
[50] Docket No. 1-4, pp. 2 – 4, ¶¶ 7 – 12.

Program and eligibility for Housing Assistance Payments was terminated.[51] Title 42 U.S.C. § 3604(f)(3)(B) provides that discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."[52] Plaintiff's threadbare allegations that she was discriminated against because SAHA refuses to pay Plaintiff's landlord retroactively are not supported by any factual allegations that she was not afforded equal opportunity to use and enjoy a dwelling.[53] Plaintiff has not pleaded any facts that remotely support her argument that she was discriminated against in violation of the disability protections of the Fair Housing Act. Thus, Plaintiff's claims against SAHA for violations of Fair Housing Act brought under 42 U.S.C. § 3601 et seq. and 42 U.S.C. § 1983 et seq. should be dismissed for failure to state a claim upon which relief can be granted.

13. A public housing authority may terminate housing assistance for a family's action or failure to act as described in 24 C.F.R. § 982.552.[54] A public housing authority has the authority to terminate housing assistance if the family violates any family obligations under the Section 8 Housing Voucher Program.[55] In order to participate in the Section 8 Housing Voucher Program, a family has certain obligations pursuant to 24 C.F.R. § 982.551, such as:

> (1) The family must supply any information that the PHA or HUD determines is necessary in the administration of the program, including submission of required evidence of citizenship or eligible immigration status (as provided by 24 C.F.R. part 5). ***'Information' includes any requested certification***, release or other documentation.
>
> (2) ***The family must supply any information requested by the PHA or HUD for use in a regularly scheduled reexamination*** or interim

---

[51] Docket No. 1-4, p. 4, ¶ 12.
[52] 42 U.S.C. § 3604(f)(3)(B).
[53] *See* Docket No. 1-4, pp. 1 – 7.
[54] 24 C.F.R. § 982.552(a)(1).
[55] 24 C.F.R. § 982.552(c)(1)(i).

>   reexamination of family income and composition in accordance with HUD requirements.
>
>   (3) The family must disclose and verify social security numbers (as provided by part 5, subpart B, of this title) and must sign and submit consent forms for obtaining information in accordance with part 5, subpart B, of this title.
>
>   (4) Any information supplied by the family must be true and complete.[56]

Here, SAHA terminated housing assistance payments for Plaintiff for failure to act in compliance with scheduled recertification appointments. SAHA, however, provided Plaintiff a reasonable accommodation, in light of the circumstances alleged by Plaintiff, and offered her an informal administrative hearing to appeal the decision to terminate Plaintiff's housing assistance payments. Plaintiff was reinstated to the Section 8 Housing Voucher Program following the May 14, 2019 informal administrative hearing.

14. Plaintiff's claim of discrimination is in essence a complaint that SAHA breached its HAP Contract with Plaintiff's landlord, Intervenor Cielo Hills. Plaintiff does not have standing to bring a claim against SAHA for an alleged breach of contract with Plaintiff's landlord, Intervenor Cielo Hills. SAHA's HAP Contract with Intervenor was in the form required by HUD.[57] Pursuant to Part B(4)(b)(2) of the HUD form HAP Contract, the PHA may terminate program assistance for the family for any grounds authorized in accordance with HUD requirements, and if the PHA terminates program assistance for the family, the HAP contract terminates automatically.[58] SAHA's HAP Contract with Intervenor terminated immediately upon SAHA's initial termination of housing assistance with Plaintiff.[59] Therefore, neither Plaintiff nor Intervenor were entitled to the housing assistance payments during the time between when

---

[56] 24 C.F.R. § 982.551(b) (emphasis added).
[57] 24 C.F.R. § 982.451(a)(2).
[58] *See* 24 C.F.R. § 982.309(b)(2)(iii).
[59] *See Id*.

Plaintiff's termination and when Plaintiff was reinstated into the Section 8 Housing Voucher Program.

15. Plaintiff "is not a party to or a third party beneficiary of the HAP Contract."[60] "The HAP contract shall not be construed as creating any right of the family or other third party (other than HUD) to enforce any provision of the HAP contract, or to assert any claim against HUD, the PHA or the owner under the HAP contract."[61] Plaintiff's factual allegations in her Original Petition in no way support her apparent argument that SAHA's alleged refusal to make rental payments to Intervenor Cielo Hills somehow amounts to discrimination of Plaintiff. Thus, Plaintiff's claims against SAHA for violations of the Fair Housing Act brought under 42 U.S.C. § 3601 et seq. and 42 U.S.C. § 1983 et seq. should be dismissed for failure to state a claim upon which relief can be granted.

**b.      SAHA Has Governmental Immunity from Intervenor's Breach of Contract Claim**

16. SAHA is a public housing authority organized pursuant to the laws and Constitution of the State of Texas. For all purposes, including the application of the Texas Tort Claims Act (Chapter 101, Civil Practice and Remedies Code), a housing authority is a unit of local government, and the functions of a housing authority are essential governmental functions and not proprietary functions.[62] As such, SAHA is immune from suit for breach of contract except to the extent immunity has been clearly and specifically waived by the Texas Legislature.[63] Texas Local

---

[60] 24 C.F.R. § 982.456(b)(1).
[61] 24 C.F.R. § 982.456(c).
[62] See Tex. Local Gov't Code § 392; See also *Hous. Auth. Of Beaumont v. Landrio,* 269 S.W.3d 735, 739 (Tex. App. Beaumont 2008).
[63] TEX. LOC. GOVT. CODE §§ 271.151 *et seq*. provides a limited waiver of immunity from breach of contract suits for contracts for "goods and services." The instant lawsuit, at its core, is a breach of contract claim regarding real estate and it is not the type of contract covered by section 271.152's waiver of immunity from suit. *See East Houston Estate Apts., LLC v. City of Houston*, 294 S.W.3d 723 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

Government Code § 271.152 provides:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of this subchapter.[64]

The term "contract subject to this subchapter" is defined as "a written contract stating the essential terms of the agreement *for providing goods or services to the local governmental entity* that is properly executed on behalf of the local governmental entity."[65] Neither Plaintiff nor Intervenor's allegations involve goods or services which were provided to SAHA. Plaintiff nor Intervenor provided goods or services to SAHA. SAHA never received any benefit from Plaintiff or Intervenor. There has been no waiver of immunity to suit for Plaintiff's suit or the allegations giving rise to Plaintiff's suit against SAHA.[66] This suit and the facts giving rise to this suit do not involve "goods or services."[67] Rather, this suit arises from a dispute over real property and SAHA's governmental function and capacity in dealing with a contract regarding real property. There has been no waiver of immunity by the Texas Legislature regarding such a real property dispute.[68] Under Texas law, "[u]njust enrichment demands restitution when a party receiving property or benefits would be unjustly enriched if it were permitted to retain the property or benefits at the expense of another."[69] "Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory'

---

[64] TEX. LOC. GOVT. CODE § 271.152.
[65] TEX. LOC. GOVT. CODE § 271.151(2)(A) (emphasis added).
[66] *See East Houston Estate Apts., LLC v. City of Houston*, 294 S.W.3d 723 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *see also San Antonio Hous. Auth. v. Serento Apartments, LLC*, 478 S.W.3d 820, 826 (Tex. App.—San Antonio 2015, no pet.).
[67] *See* TEX. LOC. GOVT. CODE § 271.151; *see also* TEX. LOC. GOVT. CODE § 271.152; *see also East Houston Estate Apts.*, 294 S.W.3d at 733, 736-37.
[68] *Id*.
[69] *Bryant v. CIT Group/Consumer Finance, Inc.*, 303 F.Supp.3d 515, 527 (S.D. Tex. 2018) (*quoting Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 43 (Tex. 1992)).

like unjust enrichment."[70] First, it has been established SAHA did not receive any benefit or goods or services from Intervenor or Plaintiff, but merely served as a conduit for federal funds to Intervenor.[71] SAHA did not waive its immunity from suit for breach of contract because the contract does not fit within the narrow waiver of immunity found in Texas Local Government Code § 271.151(2)(A) and § 271.152.[72] Second, there is a valid, express contract, specifically the HAP Contract, between SAHA and Intervenor, therefore, Intervenor cannot recover under a quasi-contract theory of unjust enrichment.[73] Thus, Intervenor's breach of contract and unjust enrichment claims against SAHA should be dismissed for failure to state a claim upon which relief can be granted.

c.   **SAHA Has No Municipal Liability Under Plaintiff's § 1983 Claim**

17.   SAHA is a public housing authority organized pursuant to the laws and Constitution of the State of Texas. As such, it is a local governmental entity and is a "person" subject to suit under § 1983.[74] "[M]unicipal liability under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."[75] "The first requirement for imposing municipal liability is proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality."[76] However, Plaintiff has not alleged an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of SAHA. In order

---

[70] *Id.* (*quoting Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)).
[71] *See San Antonio Hous. Auth. v. Serento Apartments, LLC*, 478 S.W.3d 820, 826 (Tex. App.—San Antonio 2015, no pet.).
[72] *See* TEX. LOC. GOVT. CODE §§ 271.151(2)(A) and 271.152.
[73] *Bryant*, 303 F.Supp.3d at 527 (S.D. Tex. 2018) (*Fortune*, 52 S.W.3d at 684 (Tex. 2000)).
[74] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).
[75] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001) (citing *Monell,* 436 U.S. at 694).
[76] *Zarnow v. City of Wichita Falls,* 614 F.3d 161, 167 (5th Cir.2010).

Defendant SAHA's Motion to Dismiss Pursuant to FRCP 12(c)                                            Page **12** of **14**

to prove a case under § 1983 against SAHA, Plaintiff must establish either a formal policy officially adopted and promulgated by a municipal policymaker, or a well-settled and common practice by municipal officials or employees of which the municipality or its policymakers were actually or constructively aware.[77]  Plaintiff's Original Petition does not contain any factual allegations establishing municipal liability.  Furthermore, SAHA cannot be held liable for a policy that is not attributable to it, as the regulation regarding the termination of housing assistance, specifically 24 C.F.R. § 982.552, was promulgated by the federal government and does not give rise to SAHA's liability as a municipality under § 1983.[78]  Thus, Plaintiff's claim against SAHA under 42 U.S.C. § 1983 should be dismissed for failure to state a claim upon which relief can be granted.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Housing Authority of the City of San Antonio, prays that Plaintiff and Intervenor's claims against it, be, in all things dismissed, and for such other and further relief, both general and special, at law or in equity, to which Defendant may show itself justly entitled.

*[Signature on the following page.]*

---

[77] *See Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).
[78] *See James v. Dallas Hous. Auth.*, 526 Fed. Appx. 388, 394–95 (5th Cir. 2013).

                          **HOBLIT DARLING RALLS**
                          **HERNANDEZ & HUDLOW LLP**
                          6243 IH-10 West, Suite 601
                          San Antonio, Texas 78201
                          Telephone: (210) 224-9991
                          Facsimile: (210) 226-1544

By: _____
                          **N. MARK RALLS**
                          Texas Bar No. 16489200
                          Email: mralls@hdr-law.com
                          **JAMES J. LEECH**
                          State Bar No. 24070131
                          Email: jleech@hdr-law.com
                          **HARRISON C. FISHER**
                          State Bar No. 24095498
                          Email: hfisher@hdr-law.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that on January 20, 2020, a true and correct copy of the forgoing instrument was sent by means indicated to the following:

| | |
|---|---|
| Ricardo A. Roman<br>TEXAS RIO GRANDE<br>  LEGAL AID, INC.<br>1111 N. Main<br>San Antonio, Texas 78212<br>*Attorney for Plaintiff* | **VIA CM/ECF** |
| Charlie Riley<br>RILEY & RILEY<br>320 Lexington Ave.<br>San Antonio, Texas 78215<br>*Attorney for Intervenor* | **VIA CM/ECF** |

                                                      _____
                                                      **N. MARK RALLS**