IN THE UNITED STATES DISTRICT

COURT WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CRUZ SANCHEZ,<br>    Plaintiff, and<br>CIELO HILLS, LLC,<br>    Plaintiff-Intervenor, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.  SA-19-CV-01248-XR |
| HOUSING AUTHORITY OF THE<br>CITY OF SAN ANTONIO,<br>    Defendant. | | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

PRELIMINARY STATEMENT

1.  This is a lawsuit by Cruz Sanchez, who is a person with disabilities and has a Section 8 housing voucher, against the Housing Authority of the City of San Antonio (SAHA) for its unlawful actions in violation of the Texas Fair Housing Act, Sections 301.025 (b) and (c) (2).  SAHA illegally terminated Plaintiff's Section 8 housing voucher assistance effective July 31, 2018.  As a result, she became responsible to her landlord, Cielo Hills, LLC, for  the full monthly contract rent of $ 1,050.00, instead of the subsidized amount of $100.00 that she had been paying.  Following Plaintiff's request for a reasonable accommodation in November 2018, SAHA granted her request in part following an administrative hearing.  It reinstated her voucher effective with the August 2019 monthly payment,  but it refused to pay retroactive housing assistance payments to her landlord. As a

1

result, she is liable to her landlord for the full monthly rent for the months of September 2018, through July 2019. Because of Defendant's actions Plaintiff has incurred debt to Cielo Hills, LLC, the Intervenor, in the amount of $10,450.00. She is subject to eviction by Cielo Hills, LLC, for nonpayment of the full rent during the period SAHA did not pay housing assistance payments. Defendant's failure to make retroactive payment to Plaintiff's landlord has denied her the equal opportunity to use and enjoy a dwelling. She seeks a declaratory judgment that SAHA violated the Fair Housing Act and Section 504 in failing to retroactively reinstate her section 8 voucher assistance, compensatory damages, and attorney's fees.

## JURISDICTION AND VENUE

2. This Court lacks jurisdiction because no federal question exists nor is there a diversity issue or any other grounds for federal jurisdiction. This case should be remanded to the District Courts for the Sate of Texas. Plaintiff relies only on causes of action of the State of Texas for relief. This case should be remanded to state court.

3. Venue is not proper in this district and division. Venue is proper in the Districts Courts of Bexar County, Texas, because the events giving rise to Plaintiff's claims occurred in Bexar County, Texas. In addition, Defendant conducts its business in Bexar County, Texas.

## PARTIES

4. Plaintiff, CRUZ SANCHEZ, is a United States citizen residing in Bexar County, Texas. She has a disability that restricts her mobility.

5.     Defendant, the HOUSING AUTHORITY OF THE CITY OF SAN ANTONIO (SAHA), also known as the San Antonio Housing Authority, is a Texas non-profit corporation whose registered office is located in Bexar County at 818 S. Flores St., San Antonio, Texas 78204. It has been served with process and answered.

## FACTS

6.     Plaintiff is a participant in the federally subsidized Section 8 Housing Voucher Program (the Voucher Program). *See generally* 42 U.S.C. § 1437f(o) (voucher statute); 24 C.F.R. Part 982 (2019) (governing regulations).

7.     The San Antonio Housing Authority (SAHA) administers the Voucher Program in San Antonio. Under the Voucher Program, low-income individuals and families apply with SAHA when its waiting list is open. They are screened for eligibility. Once they are reached on the waiting list, they are issued a housing voucher. The voucher participant is responsible for finding a landlord willing to lease under the program within certain rent limits. Upon approval of the unit by SAHA, the landlord and the tenant then sign a lease, and SAHA signs a Housing Assistance Payments Contract with the landlord under which SAHA agrees to subsidize the tenant's rent based on a formula set by Congress. Participants are required to recertify their eligibility on an annual basis.

8.     Plaintiff first received a voucher in 2015. On or about August 4, 2015, she signed a lease with Cielo Hills, LLC, for lease of an apartment for herself and her children. The initial lease term began in August 2015. Prior to the termination of her assistance, Plaintiff's total contract rent was $ 1,050.00. Her rent share was $ 100.00. This amount

included the utilities.  SAHA signed a Housing Assistance Payments contract with Cielo Hills agreeing to pay a monthly housing assistance payment in the amount of $950.00 .

9. The voucher program requires annual or periodic recertification of continued eligibility for the program.  Information in determining continued eligibility includes age, disability information, household size, income, and other information. At the time of her annual recertification in 2018, Plaintiff was 51 years old and had been disabled for some time.  The activity of daily living most affected by her medical issues is mobility or walking.  She suffers from diabetes, high blood pressure, high cholesterol, and dizzy spells that cause her to fall.  She has been diagnosed with dead nerve cells.  The diabetes has caused blurry vision, and she is also hearing impaired.  Her household monthly income at that time consisted of social security disability benefits as well as some babysitting income contributed by her daughter. The social security income was approximately $750.00 monthly.

10. Plaintiff had a recertification appointment on May16, 2018.  Plaintiff, and her then 18 year old son, arrived timely for her appointment and checked in at Defendant's electronic check-in station.  After much time had passed without being called into an office for her appointment  Plaintiff checked with the receptionist only to be told she had no appointment. Plaintiff showed the receptionist her appointment letter and her check-in stub. The receptionist maintained her assertion that Plaintiff had no appointment that day and that her name did not show as having checked in despite the fact that Plaintiff had a check in stub in her possession.  The receptionist kept both the check  stub and the appointment letter and told Plaintiff to go home and await a letter scheduling a new appointment.  Plaintiff did as instructed.

11. Plaintiff did not receive a letter informing her of a rescheduled appointment, although she regularly checked her mail. However, from March 2018 to May 2018, Plaintiff's landlord was experiencing theft and/or vandalism at the community mailbox structure. During this period of vandalism, for example, the Social Security Administration sent an important notice regarding benefits for Plaintiff's son that he did not receive. Plaintiff subsequently received a Notice of Intent to Terminate Housing Assistance Payments Contract, dated June 20, 2018, alleging that Plaintiff had missed two recertification appointments—one on May 16, 2018, and one on May 29, 2018. Plaintiff was present for the May 16, 2018, appointment but never received notice of the May 29, 2018, appointment.

12. Plaintiff timely requested an administrative hearing to challenge the Notice of Intent to Terminate Housing Assistance Payments Contract. The hearing was scheduled for September 6, 2018, at 3:15 p.m. Plaintiff arrived late for the hearing, and a decision was entered against her in her absence. SAHA staff indicate Plaintiff arrived about 40 minutes late. When she did arrive, she checked in with the receptionist who contacted the Hearing Coordinator and/or Hearings Officer but was informed that she was too late to be afforded a hearing. Plaintiff asked whether the hearing could be scheduled for another day or later that day, but the request was denied.

13. Plaintiff was not negligent or consciously indifferent to the need to appear on time for the scheduled hearing. She traveled by bus that day to SAHA as she had on prior occasions and took a bus she believed would get her to the hearing in plenty of time. She began her bus trip two hours before her scheduled hearing. However, the bus was delayed in getting her to the housing authority because of a very long --30 to 40 minutes --

delay at a train crossing (which Plaintiff had not experienced on prior trips) and because of heavy rains that day.  Plaintiff's trip required a transfer to a second bus which arrived late.

14. Plaintiff is disabled and cannot drive and must rely on bus service for transportation.  Plaintiff does not have a driver's license.  She suffers from dizzy spells which cause her to fall and negate her ability to drive.  She uses a walker and is diagnosed with type 2 diabetes and suffers from high blood pressure and cholesterol issues. She has fluid in her leg problems and has been diagnosed with dead nerve cells. Plaintiff's blurry vision is attributable to the diabetes. She is hearing impaired.

15. Plaintiff received a Notice of Informal Hearing Decision by document dated September 17, 2018.   The document stated that "You FAILED TO APPEAR for your Informal hearing, therefore assistance is terminated."   The document further states that there is no other appeal process available with SAHA……This Concludes the informal hearing administrative process."  (Capitalization in original).

16. On or about December 14, 2018, Plaintiff, through counsel, submitted a request to SAHA for a reasonable accommodation under the Fair Housing Ac Plaintiff's request was addressed to the President and CEO of the housing authority, David Nisivoccia. The request is dated December 14, 2018 and is entitled REQUEST TO REINSTATE VOUCHER RETROACTIVELY.    The document specifically requests the reinstatement of Plaintiff's voucher retroactively to the date of termination and that the landlord be paid retroactively as well.  In response, on or about January 2019, SAHA specifically requested documentation linking Plaintiff's disability to her failure to appear on time for her informal hearing.  On, or about March 2019, Plaintiff provided SAHA a doctor's statement

confirming that her disability was the source of her failure to timely appear for the informal hearing. Defendant then granted the Plaintiff a new hearing.

17. A hearing was held on May 14, 2019, at which Plaintiff was represented by counsel. The Hearing Officer ruled that Plaintiff should be reinstated in the Voucher Program but the written decision was silent on the issue of retroactive reinstatement and payment of housing assistance payments to Cielo Hills, LLC, for the period of time during which payments had been terminated. The decision of the Hearing Officer in reinstating the Plaintiff necessarily supports Plaintiff's assertions regarding the recertification appointments—that she appeared for the May 16, 2018, appointment and did not receive notice of the May 29, 2018, appointment. In fact, during the hearing the Hearing Officer commented that she was aware of problems of the nature described by Plaintiff as occuring on May 16, 2018. No later than June 22, 2019, Counsel for Plaintiff again brought to Defendant's attention the need for the retroactive payments to Plaintiff's landlord. By email communication dated August 29, 2019, Defendant formally denied Plaintiff's request that the Plaintiff's landlord be paid retroactively. This decision was conveyed to Plaintiff's counsel by Laura Longoria who is employed in the Federal Housing Programs unit of Defendant. Ms. Longoria did not state whether she or someone else had made the decision.

18. Defendant's refusal to retroactively reinstate Plaintiff's voucher subsidy places Plaintiff in jeopardy of being evicted for non-payment of rent and has left Plaintiff indebted to her landlord for eleven months of rent, previously paid by Defendant , plus late charges. During the period that Plaintiff's voucher was terminated, she continued to pay Cielo Hills her monthly share of the rent in the amount of $100.00. But she did not have the financial means to also pay the monthly housing assistance payment of $950.00. Thus, she

currently owes Cielo Hills unpaid rent in the amount of $10,450.00, plus late fees. Cielo Hills has not agreed that it will not evict Plaintiff for the unpaid rent, and it has not agreed to waive the amount owed. If Plaintiff seeks to move to another apartment in the future, the debt owing to Cielo Hills will make it very difficult to find a landlord willing to lease to her. But for Defendant's failure to make retroactive payment to the Intervenor, Plaintiff would not have incurred this debt.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: VIOLATION OF THE REASONABLE ACCOMMODATION PROVISION   OF THE TEXAS FAIR HOUSING ACT, Texas Property Code Section 301.025 (c )(2)

19.     Plaintiff realleges the facts set forth in paragraphs 6-18 above.  Defendant's actions violate the disability protections of the Texas Fair Housing Act and the implementing regulations that require Defendant to make reasonable accommodations in its rules, policies, practices, or services if the accommodation may be necessary to allow the person with disabilities an equal opportunity to use and enjoy a  dwelling.   Here Defendant has failed to accommodate Plaintiff by failing to waive its policy set forth in its Administrative Plan at 13.2.E(5): stating that "Once a HAP contract is terminated, no further HAP may be made under that contract."     Because Plaintiff was illegally terminated from the Voucher Program, Defendant should have  waived its policy of making no payments on terminated Housing Assistance Payments (HAP) contracts and should have made payments on the HAP contract retroactively to ensure that Plaintiff may remain in the apartment. Accordingly, Plaintiff seeks relief under Section 301.153 of the Texas Property Code for actual and punitive damages, reasonable attorney fees, and court costs.

8

### SECOND CAUSE OF ACTION: VIOLATION OF THE ANTI-DISCRIMINATION PROVISION OF THE TEXAS FAIR HOUSING ACT
Texas Property Code Section 301.025(b)

20. Plaintiff realleges the facts set forth in paragraphs 6-18 above. Defendant's actions violate the disability protections of the Texas Fair Housing Act that prohibit Defendant from discriminating against a person in the terms, conditions, or privileges of rental of a dwelling or in the provision of services or facilities in connection with the dwelling because of a disability of the person. Specifically, the Defendant's failure to make retroactive payments to Plaintiff's landlord upon finding cause to re-instate her to the voucher program constitutes discrimination based upon disability because it was her disability that led to the termination of rent payments when she arrived late to her hearing. But for her disability she would not have been terminated from the voucher program. If Defendant felt barred from using funds designated for fulfilling HAP contracts it could have used other funds to make retroactive payments to the landlord since Defendant had previously wrongfully terminated her from the voucher program. Accordingly, Plaintiff seeks relief under Section 301.153 of the Texas Property Code for actual and punitive damages, reasonable attorney fees, and court costs.

### PRAYER

21. Plaintiff prays:

(a) That the above styled and numbered cause re remanded to state court for want of federal jurisdiction;.

(b) That the Court find that Defendant violated Plaintiff's rights under the Texas Fair Housing Act;

(c ) That the Court award Plaintiff actual and punitive damages as alleged herein;

(d) That the Court award Plaintiff's costs; and

(e) That the Court award Plaintiff attorney fees under Section 301.153 of the

Texas Fair Housing Act.

                                          Respectfully submitted,

                                          TEXAS RIO GRANDE LEGAL AID, INC.

                                          By:  /s/ **Ricardo A. Roman**
                                          RICARDO A. ROMAN
                                          1111 N. Main
                                          San Antonio, Texas 78212
                                          Tel:   (210) 212-3722
                                          Fax:  (210) 2274321
                                          SBN: 17222400
                                          Email:   rroman@trla.org
                                          ATTORNEY FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

    I hereby certify that  a true and correct copy of the foregoing Plaintiff's First Amended Complaint was sent delivered to the following counsel prior to filing to determine whether they would oppose a motion for leave to amend and its filing.

Charlie Riley
RILEY & RILEY
320 Lexington Ave.
San Antonio, Texas 78215
ATTORNEY FOR INTERVENOR

Mark Ralls
HOBLIT DARLING RALLS
HERNANDEZ & HUDLOW LLP
6243 IH 10 West.  Suite 601
San Antonio, Texas 78201
ATTORNEY FOR DEFENDANT